UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/18/09
```

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                         :

GREENMAN-PERDESEN, INC. and GPI    :
SOUTHEAST INC.,                            :

                       :       09 Civ. 0167 (TPG)
               Plaintiffs,   :

                       :          **OPINION**
   – against –              :

                       :

BERRYMAN & HENIGAR, INC., et al.,   :

                       :

           Defendants.   :

                       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

This action arises out of a transaction in which plaintiff Greenman-Pedersen Southeast ("GPISE") purchased certain assets from defendant Berryman & Henigar, Inc. ("B&H"). Plaintiffs allege that defendants misrepresented certain material information during the negotiations leading to the sale. Plaintiffs therefore assert various state law claims of fraud and breach of contract, as well as claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68. Defendants now move to dismiss most of plaintiffs' claims.

The motion is granted to the extent set forth below. The complaint is dismissed against defendants Tong, Wright, Dycus, Lynch, Stokes, and Alonso, as well as against Berryman & Henigar Enterprises and Bureau Veritas Holdings, for lack of personal jurisdiction. The RICO cause of action is dismissed as against defendants Berryman & Henigar, Inc. and Bureau Veritas North America. The case as to Berryman &

Henigar and Bureau Veritas North America is remanded to the Supreme Court of New York for Suffolk County.

The motion is granted in part.  The claims against the individual defendants are dismissed for lack of personal jurisdiction.  The RICO claim against all defendants is dismissed for failure to state a claim. Because this disposes of all of the claims over which the court had original jurisdiction, the case is remanded to the Supreme Court of New York for Suffolk County.

## The Complaint

The following facts are taken from the complaint and, for the purposes of this motion, are assumed to be true.

In June 2006, employees of plaintiff Greenman-Pedersen, Inc. ("GPI") and its affiliate, GPISE, contacted B&H, a construction company, to discuss the purchase of certain B&H assets.  GPI and B&H employees proceeded to communicate with each other frequently about the possible sale.  On October 27, 2006, GPISE and B&H entered into a contract known as the "Asset Purchase Agreement," in which B&H agreed to sell certain assets to GPISE for $1 million.

As part of the sale, GPISE became responsible for several of B&H's construction projects, which were ongoing and incomplete at the time of the sale.  After the sale closed, GPISE allegedly learned that there were problems with some of these projects.  According to the complaint, B&H had made significant errors when designing and executing the

- 2 -

projects, and its clients had notified B&H that they were dissatisfied with the firm's work.  However, B&H had failed to disclose these issues to GPISE.

After the transaction closed, GPISE also learned that B&H had overstated the value of the assets that GPISE purchased in the transaction.  One of these assets was the right to certain revenue from projects that were in progress at the time of the closing.  Specifically, GPISE was entitled to revenue that had been earned, but not yet invoiced, at the time of closing.  B&H, however, would retain the right to amounts that had already been invoiced.  The complaint alleges that, in the weeks leading up to the closing, B&H took advantage of this dichotomy by overbilling its clients.  This significantly increased the amount of revenue that B&H would retain after the sale, while decreasing the revenue that GPISE would receive.

Plaintiffs' federal law claims are under RICO.  The state law claims are breach of contract, fraud, negligent misrepresentation, breach of the implied covenant of good faith and fair dealing, quantum meruit, and unjust enrichment.  In addition to making claims against B&H, plaintiffs have asserted claims against Berryman & Henigar Enterprises ("BHE"), the parent of B&H; Bureau Veritas North America ("BVNA"), the successor-in-interest to B&H and BHE as a result of a merger; and Bureau Veritas Holdings ("BVH"), the parent of BVNA.  Finally, plaintiffs are suing certain individual defendants, who are former officers of B&H—

its President and Chief Executive Officer, Dickerson Wright; its Chief Operating Officer, Mark Lynch; its General Counsel and a Senior Vice President, Richard Tong; a Senior Vice President, Mark Stokes; a Vice President, Doug Dycus; and its Controller, Berta Alonso.

Plaintiff GPI is a New York corporation with its principal place of business in New York, and GPISE is a Florida corporation with its principal place of business in Florida.  Defendant B&H is incorporated in Florida and BHE is incorporated in Nevada.  According to the complaint, the principal place of business of both B&H and BHE is New York, "care of" the law firm Orrick, Herrington & Sutcliffe LLP.  BVNA and BVH are both incorporated in Delaware and have their principal place of business in Florida.

Plaintiffs initially filed this case in Supreme Court of New York, Suffolk County.  The case was then removed to the U.S. District Court for the Eastern District of New York.  On December 16, 2008, upon the joint motion of the parties, the Eastern District transferred the case to this court pursuant to 28 U.S.C. § 1406(a).  According to the parties' correspondence with the Eastern District, plaintiffs erroneously filed the case in Suffolk County rather than New York County, causing the case to be removed to the Eastern District rather than the Southern District.

Defendants move to dismiss the complaint on several grounds.  The individual defendants, as well as BHE and BVH, move under Federal Rule of Civil Procedure 12(b)(2) to dismiss for lack of personal

- 4 -

jurisdiction.  All of the defendants move under Rule 9(b) to dismiss the fraud-based claims for failure to plead fraud with particularity.  All of the defendants also move under Rule 12(b)(6) to dismiss, for failure to state a claim, all of the causes of action except the breach-of-contract claim.

## Discussion

### Dismissal Under Rule 12(b)(2) for Lack of Personal Jurisdiction

To survive a motion to dismiss as to personal jurisdiction, a plaintiff "need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials," although it eventually must establish jurisdiction by a preponderance of the evidence.  Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981).  For reasons to be set forth, the court concludes that plaintiffs have failed to make even this minimal showing with respect to the individual defendants, and as to BHE and BVH.

### Facts Relevant to Personal Jurisdiction

Plaintiff GPI is a New York corporation with its principal place of business in New York, and plaintiff GPISE is a Florida corporation with its principal place of business in Florida.  Defendant B&H does not deny that it is subject to jurisdiction in New York.  The same is true for defendant BVNA.  As noted above, all of the other defendants contest personal jurisdiction.

The complaint offers few details relevant to the issue. However, a certain amount of information is contained in the Asset Purchase Agreement attached to the complaint, as well as other materials submitted on these motions. It would appear that, during the times relevant to this case, B&H had its headquarters in Fort Lauderdale, Florida. Plaintiffs concede that defendants Lynch, Tong, Stokes, Dycus, and Alonso resided and worked in Florida. However, plaintiffs assert that defendant Wright, although he was President and Chief Executive Officer of B&H, resided and worked in California, and this is not denied.

The complaint alleges that B&H is incorporated in Florida and BHE is incorporated in Nevada, although according to the complaint, the principal place of business for both corporations is "care of" the law firm of Orrick, Herrington & Sutcliffe in New York. The latter is quite obviously not an address for the carrying out of any construction business. It would appear to be an address for purely formal purposes.

Plaintiffs have submitted an affidavit of Steve Greenman, the Chief Executive Officer of plaintiffs GPI and GPISE. This affidavit, together with exhibits to it, provides information about the negotiations leading up to the sale of the B&H assets. As would be expected, there were various telephone and e-mail communications. There was nothing to show any participation by defendants except from Florida. There were also meetings between plaintiffs and defendants, but there is no evidence of such meetings occurring in any other location than Florida.

- 6 -

Conclusions Regarding the Individual Defendants

For the court to take jurisdiction over the individual defendants, none of whom reside in New York, one of the provisions of New York's long-arm statute must apply.

Plaintiffs argue that the individual defendants are subject to jurisdiction because they committed a tort and transacted business in New York, and the cause of action arose from such tort or business transaction. See CPLR § 302(a)(1), (a)(2). Plaintiffs do not contend that any of the individual defendants were physically present in New York when they committed these acts. Instead, they claim that the defendants either "projected" themselves into New York by communicating with GPI officials by telephone and e-mail or acted in New York through B&H's New York counsel.

For the court to find that an individual transacted business in New York without actually visiting New York, it must find that he "project[ed] [himself] into New York to participate in . . . activities localized in the state." Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 788 (2d Cir. 1999). Alternatively, the court can exercise jurisdiction over an individual whose agent transacted business in New York, as long as the out-of-state individual knew of, consented to, controlled, and benefited from the business transaction. Retail Software Servs., Inc. v. Lashlee, 854 F.2d 18, 22 (2d Cir. 1988). In either case, the question of whether a party transacted business in New York is

- 7 -

evaluated based on the totality of circumstances. Bank Brussels, 171
F.3d at 787.

For a tortious act to support jurisdiction, the act must have been
committed by the party or its agent while that person was physically
present in New York. Bank Brussels, 171 F.3d at 790. As a matter of
law, communications sent from outside New York into the state do not
qualify as a "tortious act within the state" for purposes of New York's
long-arm statute. Id.; Bensusan Rest. Co. v. King, 126 F.3d 25, 29 (2d
Cir. 1997).

In the present case, the individual defendants themselves were
never physically present in New York to transact business or commit a
tort in connection with the matter at issue in this case. The business of
B&H was based in Florida, and there is no indication that it conducted
any business in New York relevant to the present case. All of the
meetings regarding the B&H sale took place in Florida, not New York.
The individual defendants surely did not project themselves into New
York by way of such meetings.

The defendants' e-mails and phone calls to GPI officials in New
York do not support the exercise of jurisdiction in New York. Although
B&H's initial advertisement was distributed nationwide, this
advertisement referred only to the sale of Florida offices of an engineering
firm. GPI then made the initial contact with B&H. The individual
defendants did send frequent e-mails to GPI officials, who happened to

- 8 -

be located in New York, but almost all of these e-mails were sent in response to inquiries from GPI. Moreover, the e-mails produced by plaintiffs indicate that GPI believed that they needed to meet with B&H officials in Florida for the transaction to succeed, which they did. Therefore, there is no basis for finding that the individual defendants projected themselves into New York to transact business there.

Nor did they act in New York through an agent. The actions of the Orrick attorneys do not establish jurisdiction over the individual defendants. Orrick was acting as counsel for B&H. E-mails show that Orrick attorneys were preparing the legal documents governing the sale of B&H. Plaintiffs have offered no evidence to refute this, or any evidence that the Orrick attorneys were actually acting on behalf of the individual defendants. On the issue of commission of a tort, there is simply no evidence that any individual defendant was present in New York to do anything in connection with the transaction.

The individual defendants are therefore dismissed from this action.

Conclusions Regarding BVH and BHE

There is also no basis for asserting jurisdiction over BHE and BVH, both of which are incorporated and have principal places of business outside New York. As an initial matter, the fact that these entities are the parents of, respectively, B&H and BVNA (neither of which contests jurisdiction) does not itself provide a basis for jurisdiction.

Jazini v. Nissan Motor Co., 148 F.3d 181, 184 (2d Cir. 1998).  Plaintiffs do not dispute this.  Nor do plaintiffs argue that B&H and BVNA acted in New York as agents of their parents.

With respect to BVH, plaintiffs instead argue that BVH consented to jurisdiction by registering with the New York Department of State ("DOS") and designating the DOS as an agent for service.  When a foreign corporation registers with the DOS for authorization to do business and maintains that authorization, it is deemed to have consented to personal jurisdiction in New York.  Rockefeller Univ. v. Ligand Pharm., 581 F. Supp. 2d 461, 466 (S.D.N.Y. 2008).  Plaintiffs have submitted a document from the DOS indicating that BVH received such authorization at one time.  However, that document also explicitly states that BVH's registration is "inactive" and that the designation of a registered agent was "revoked."  Curiously, defendants have not disputed plaintiffs' claim that BVH is registered in New York.  Nonetheless, since the DOS document produced by plaintiffs clearly indicates that BVH is no longer registered to do business in New York, the company has not consented to personal jurisdiction for purposes of this action.

With respect to BHE, plaintiffs argue that it is subject to jurisdiction for two reasons.  First, since Florida records state that BHE's address is "care of" the Orrick law firm in New York, plaintiffs argue that BHE is doing business in New York and therefore subject to general personal jurisdiction in New York.  However, a corporation is only

deemed to be doing business in New York when it is engaged in
continuous, permanent, and substantial activity in the state.  Wiwa v.
Royal Dutch Petrol. Co., 226 F.3d 88, 95 (2d Cir. 2000).  There is no
evidence that BHE has conducted any activity in New York.  The fact that
it has asked its New York law firm to accept its mail is of no significance.
Second, plaintiffs argue that BHE transacted business in New York by
issuing a guaranty with respect to B&H's performance of the Asset
Purchase Agreement, particularly because the agreement contains a
forum selection clause that references New York.  However, the guaranty
contains no reference to New York, and there is no basis for finding that
in entering into the guaranty, BHE conducted any activities in New York.
Nor does the choice of New York in the forum selection clause of the
Asset Purchase Agreement, an entirely separate contract which was not
signed by BHE, mean that BHE consented to jurisdiction in New York.

There is therefore no basis for asserting personal jurisdiction over
BVH and BHE, and they are dismissed from this action.

### Dismissal of the RICO Claims Under Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint
must plead sufficient facts to state a claim to relief that is plausible on
its face.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  In
deciding such a motion, a court must accept as true the facts alleged in
the complaint, and may consider documents attached to the complaint,
incorporated by reference into the complaint, or known to and relied on

- 11 -

by the plaintiff in bringing the lawsuit.  <u>ATSI Commc'ns, Inc. v. Shaar</u> <u>Fund, Ltd.</u>, 493 F.3d 87, 98 (2d Cir. 2007).

The complaint alleges that defendants conducted "an enterprise through a pattern of racketeering activity in violation of 18 U.S.C.A. §§ 1961-1968."  Although the complaint does not identify the specific provision of RICO that defendants are alleged to have violated, the elements discussed by plaintiffs in their brief suggest that they are alleging a violation of 18 U.S.C. § 1962(c) based on claims of mail and wire fraud.

To state a claim under 18 U.S.C. § 1962(c), a plaintiff must allege that each defendant conducted an enterprise through a pattern of racketeering activity.  <u>DeFalco v. Bernas</u>, 244 F.3d 286, 306 (2d Cir. 2001).  Defendants argue that the complaint here is deficient with respect to every element required by § 1962(c).  However, since it is most clearly deficient with respect to the allegations that an "enterprise" existed and that a "pattern" of criminal activity occurred, the court need not reach defendants' arguments with respect to whether the complaint sufficiently alleges that defendants engaged in racketeering activity.

Plaintiffs fail to allege the existence of an enterprise as required by the statute.  They propose three possible "enterprises," none of which satisfies the statute's requirements.  The complaint identifies the alleged enterprise as "a pattern of racketeering by defendants."  However, since § 1961(4) defines an "enterprise" as "any individual, partnership,

- 12 -

corporation, association, or other legal entity, [or] any union or group of individuals associated in fact although not a legal entity," a pattern of conduct cannot constitute an enterprise.

That flaw alone is sufficient to dispose of the RICO claim. Nonetheless, plaintiffs attempt to salvage their RICO claim by identifying other possible enterprises in their memorandum of law, none of which is plausible. First, they refer to the provision of RICO that recognizes that a "group of individuals associated in fact" can act as an "enterprise" for purposes of the statute. § 1961(4). In order for such a group to constitute a RICO enterprise, the group must be associated for a common illegal purpose, and the hierarchy, organization, or activities of the group must demonstrate that its members worked together to achieve that purpose. City of N.Y. v. Smokes-Spirits.com, Inc., 541 F.3d 425, 447 (2d Cir. 2008). Although it is not clear who plaintiffs believe would constitute this group, the most natural possibility is the individual defendants. However, plaintiffs have failed to make any plausible allegation that the defendants in this action associated for a common illegal purpose and then worked together to achieve that purpose. Even if it is true that the individual defendants acted illegally in connection with the sale of B&H, it appears that they initially associated for the legitimate purpose of carrying on the business of B&H.

Alternatively, plaintiffs suggest in their brief that "the corporation itself is the enterprise." This presumably refers to B&H. However,

- 13 -

because § 1962(c) refers to the activity of "any person employed by or associated with any enterprise," courts have consistently held that plaintiffs must show that the RICO defendant was distinct from the enterprise itself. Cedric Kushner Promotions, Inc. v. King, 533 U.S. 158, 161-62 (2001). Thus, a "corporate entity may not be both the RICO [defendant] and the RICO enterprise." Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339, 344 (2d Cir. 1994). Similarly, for a corporation to be held liable under RICO based on its associations with others (such as its employees), it must have formed "an enterprise that is sufficiently distinct from itself." Id.; Cedric Kushner, 533 U.S. at 164. Thus, to the extent that plaintiffs allege that B&H itself is the RICO enterprise, they cannot claim that B&H also violated RICO. Similarly, to the extent that plaintiffs allege that the RICO enterprise was formed by the combination of B&H with its employees, they cannot show that the RICO enterprise was sufficiently distinct from B&H itself.

In addition to failing to allege the existence of an enterprise, the complaint fails to state a plausible claim that a "pattern" of racketeering activity occurred. In order to show that a pattern of activity occurred, a plaintiff must show that multiple predicate acts occurred, that those acts were related to each other, and that they "amount to, or that they otherwise constitute a threat of, continuing racketeering activity." H.J. Inc. v. N.W. Bell Tel. Co., 492 U.S. 229, 240 (1989). To establish that the racketeering activity was "continuing," a party may allege either "a series

- 14 -

of related predicates extending over a substantial period of time" or "past conduct that by its nature projects into the future with a threat of repetition." Id. at 241-42. However, a "threat of repetition" does not establish continuity if the crimes were not a "regular means by which" a defendant conducted its business and the alleged racketeering scheme is "inherently terminable." Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 244 (2d Cir. 1999). Thus, since "Congress was concerned in RICO with long-term criminal conduct," "acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." H.J., 492 U.S. at 242. The Second Circuit has therefore indicated that racketeering activity must continue for at least two years to constitute a pattern. DeFalco, 244 F.3d at 321.

The complaint here fails to allege a pattern of racketeering activity. Plaintiffs' allegations of mail and wire fraud center around the four-month period during which plaintiffs and defendants were negotiating the sale transaction. Even assuming that the fraud allegations based on this four-month period are themselves plausible, the complaint offers no facts that would establish that defendants made fraudulent communications after the sale transaction was completed. A series of alleged misrepresentations during a four-month period does not constitute a pattern of racketeering activity that extended over a substantial period of time. Moreover, since the acts alleged in the complaint were not the regular means by which B&H conducted its

- 15 -

business, and any scheme of illegal activity would naturally conclude when the sale was completed, the alleged scheme did not "by its nature project[] into the future." H.J., 492 U.S. at 242. Indeed, contrary to plaintiffs' claims, the allegations in the complaint have nothing to do with "long-term criminal conduct," id., but are, instead, rooted in more conventional claims of breach of contract and fraud.

Plaintiffs attempt to avoid this result by way of the following arguments, neither of which has merit. First, they argue that continuity can be shown even when racketeering activity is voluntarily terminated by the defendants. That is true, but it does not address the central issue here—that there is no plausible allegation that the activity continued over a substantial period of time or would continue in the future. Second, they argue that defendants may have engaged in other illegal activity (to the detriment of B&H customers and other non-parties) outside the five-month period alleged in the complaint. This argument is based on conclusory, speculative allegations which are not contained in the complaint and are not sufficient to defeat a motion to dismiss. Moreover, even if the court were to credit these allegations, it appears unlikely that plaintiffs would have standing to raise them in support of their RICO claim.

The RICO claims are therefore dismissed against all defendants.

## Remand

There is no longer any basis for exercising original jurisdiction over this case. The only federal question raised in the case is the RICO claim, which, as stated above, is being dismissed. There is also no basis for exercising diversity jurisdiction, since both GPI and B&H are citizens of New York. 28 U.S.C. § 1332(a), (c)(1). Under these circumstances, the court has discretion to decline to exercise supplemental jurisdiction over the state law claims. § 1367(c)(3); Carlsbad Tech., Inc. v. HIF Bio, Inc., 129 S. Ct. 1862, 1867 (2009). It is particularly appropriate for a court to decline jurisdiction when federal claims "have dropped out of the lawsuit in its early stages and only state-law claims remain." Carnegie-Mellon Univ. v. Churchill, 484 U.S. 343, 350 (1988). Although a court will usually dismiss such a case without prejudice, "a remand generally will be preferable to a dismissal when the statute of limitations on the plaintiff's state-law claims has expired before the federal court has determined that it should relinquish jurisdiction over the case." Id. at 351-52.

As noted above, this case was initially brought in New York state court, and was then removed to the Eastern District of New York. Plaintiffs expressed concern before the Eastern District, in December 2008, that they would face statute-of-limitations problems if the case was dismissed by that court. The parties also agreed before the Eastern District that the case should have been brought in the Supreme Court

for New York County, rather than Suffolk County, because of the forum selection clause of the Asset Purchase Agreement.

In light of these circumstances, the court declines to exercise jurisdiction over the state law claims in the complaint, and remands the case to the Supreme Court of New York. However, because the federal removal statute speaks of remanding "to the State court from which it was removed," 28 U.S.C. § 1447(c), it appears most appropriate to remand the case to the Supreme Court for Suffolk County. The parties can, presumably, then move before the Suffolk County court for a change of venue to New York County. See CPLR § 501.

As a result of the remand, it is unnecessary to reach defendants' arguments regarding the dismissal of certain of the state law claims.

## **Conclusion**

Defendants' motion to dismiss is granted to the extent set forth above. The complaint is dismissed against defendants Tong, Wright, Dycus, Lynch, Stokes, and Alonso, as well as against Berryman & Henigar Enterprises and Bureau Veritas Holdings, for lack of personal jurisdiction. The RICO cause of action is dismissed as against defendants Berryman & Henigar, Inc. and Bureau Veritas North America.

The case as to Berryman & Henigar and Bureau Veritas North America is remanded to the Supreme Court of New York for Suffolk County.

SO ORDERED.

- 18 -

Dated:  New York, New York
        August 18, 2009

_____
Thomas P. Griesa
U.S.D.J.